IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS, EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| JONATHAN TOLLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16 C 0130 |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| et al., | ) | Judge Staci M. Yandle |
| | ) | |
| Defendants. | ) | Mag. Judge Reona J. Daly |

**PLAINTIFF'S RESPONSE TO THE WEXFORD
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now comes Plaintiff, Jonathan Tolliver, through his attorneys, Loevy & Loevy, and respectfully responds to the motion for summary judgment filed by Defendants Moldenhauer, Trost, and Wexford Health Sources, Inc., Doc. No. 77, stating as follows:

## Introduction

Plaintiff Jonathan Tolliver has brought this lawsuit against correctional and medical staff for denying him medical care and access to medical care following a shakedown at Menard Correctional Center (Menard) on April 8, 2014 that left him with a broken hand.[1] Wexford Health Sources, Inc. (Wexford) and two of its employees—Nurse Practitioner Michael Moldenhauer and Dr. John Trost—ignored

---

[1] In his Complaint, Doc. No. 1, Plaintiff also brought multiple claims under the Eighth Amendment regarding the shakedown itself. Doc. No. 1 at 5–11. The Court has since consolidated Mr. Tolliver's claims regarding the shakedown at Menard with the putative class action, *Ross, et al. v. Gossett, et al.*, No. 15 C 0309 (S.D. Ill.). Doc. No. 8 (42 U.S.C. § 1915A Order) at 8. Thus the only claims remaining in this case relate to Mr. Tolliver's denial of medical care following the shakedown.

Mr. Tolliver's broken hand and delayed his medical care for 23 days, leaving him to suffer severe physical pain.

Defendants Moldenhauer, Trost, and Wexford (the Wexford Defendants) have moved for summary judgment, contending that Plaintiff did not exhaust his administrative remedies in compliance with the Prison Litigation Reform Act (PLRA).[2] Defendants cannot meet their burden to prove this affirmative defense, however, because as the evidence demonstrates, Plaintiff complied with the prison's rules regarding the administrative grievance system, and because prison staff construed both of Plaintiff's grievances as raising a complaint about denial of medical care and addressed those grievances and appeals on the merits. Accordingly, the Court should deny Defendants' motion for summary judgment.

## Plaintiff's Statement of Material Facts

### I. Plaintiff's Allegations

On February 4, 2016, Plaintiff filed this lawsuit. Doc. No. 1. In his Complaint, Plaintiff alleges that a correctional officer broke his hand as his handcuffs were being removed following a shakedown of his housing unit at Menard on April 8, 2014. *Id.* ¶¶ 23, 30–32, 48; *see also* Ex. A (Tolliver Decl.) ¶ 3. Plaintiff alleges that his hand immediately began to swell, soon reaching twice its normal size. Doc. No. 1 ¶ 34. He alleges that he submitted numerous "sick call slips"—written requests for medical attention—in the days following the shakedown and

---

[2] No other Defendants have sought summary judgment on the basis of exhaustion. *See* Doc. No. 40 at 1 (setting deadline of October 28, 2016 to file motion for summary judgment on exhaustion). Accordingly, Plaintiff's response does not address his claims against these other Defendants.

made several oral requests to correctional and medical staff for medical care, but received no medical attention. *Id.* ¶¶ 35–38, 40–43.

In his Complaint, Plaintiff alleges that the first time he received any medical attention whatsoever occurred on April 16, when he encountered a male nurse. *Id.* ¶ 39. Plaintiff further alleges that the nurse did not properly evaluate Plaintiff or refer him for evaluation or treatment, but instead simply gave him some Tylenol and told Plaintiff that his hand was not broken. *Id.* Plaintiff alleges that when he saw Defendant Moldenhauer two days later, he told him about the pain he continued to suffer (pain that the Tylenol did not relieve) and showed him his hand. *Id.* ¶¶ 41–42. He further alleges that Defendant Moldenhauer refused to provide him any additional pain medication, and again told Plaintiff that his hand was not broken. *Id.* ¶ 41.

Plaintiff alleges that Defendant Moldenhauer scheduled Plaintiff for an X-ray of his hand, but further delayed Plaintiff's treatment by failing to review the X-ray until 3 days later. *Id.* ¶¶ 41, 44, 47. He alleges that on April 21, 2014, Defendant Moldenhauer confirmed that Plaintiff's hand was in fact broken, but told Plaintiff that he could not receive treatment for the hand until Wexford's administrative staff had approved it. *Id.* ¶¶ 47–48. Plaintiff did not receive any treatment until May 1, 2014, when an orthopedist performed surgery on the hand, 23 days after it had been broken. *Id.* ¶ 48.

In his Complaint, Plaintiff alleges that some of the denials of medical care that he suffered were caused by the policies and practices of Wexford, including a

policy maintained by both Wexford and Illinois Department of Corrections (IDOC) administrative staff not to respond to sick call slips or requests for medical care while Menard is locked down. *Id.*

## II.  Plaintiff's Grievance No. 107-5-14[3]

On April 19, 2014, Mr. Tolliver submitted a grievance to his correctional counselor. Ex. A ¶ 4; Ex. A.1 (Grievance No. 107-5-14). In his grievance, Mr. Tolliver detailed the abusive shakedown that he had endured, including the broken hand that he suffered as a result. Ex. A.1 at 2. He further stated that he submitted a sick call slip for medical care the night of April 8, and "every night after that . . . ." *Id.* Mr. Tolliver explained in his grievance that he eventually asked a correctional officer whether they were conducting sick call at Menard and was told "no." *Id.* He then stated that he was not seen by any medical staff until approximately one week later, when he saw a male nurse who told him his hand was not broken, despite the fact that it "was black and blue." *Id.* He explained that he did not receive any X-rays for his hand until April 18, 2014. *Id.*

On or about April 23, 2014, Counselor Phoenix, Mr. Tolliver's correctional counselor at the time, responded to Grievance No. 107-5-14. Ex. A.1 at 1; *see also* Ex. A ¶ 7. Yet Mr. Tolliver did not receive Counselor Phoenix's response until approximately May 7 or 8 because of his relocation from the housing unit at Menard

---

[3] Plaintiff submitted two grievances relevant to this case, including one on April 19, 2014, and another on April 23, 2014. These grievances initially contained no identifying numbers. Once they reached the Grievance Office, however, grievance officers assigned the number 107-5-14 to Plaintiff's April 19, 2014 grievance, Ex. A.1, and number 98-4-14 to Plaintiff's April 23, 2014 grievance. For clarity (and because Defendants do so), Plaintiff will refer to these grievances by their Grievance-Office-assigned numbers.

4

to the infirmary following his surgery. Ex. A ¶¶ 8–10. On the same day that he received Counselor Phoenix's response, Mr. Tolliver submitted Grievance No. 107-5-14 to the Grievance Office by placing it in an envelope with "Grievance Office" written on the front, and putting the envelope in the chuck hole in his door to be collected with the other mail. *Id.* ¶¶ 11–12.

According to the stamp marked on the grievance and Grievance Officer Carter's report, the Grievance Office received Grievance No. 107-5-14 on May 15, 2014. Ex. A.1 at 1; Ex. A.4 (Grievance Office Resp. to Grievance No. 107-5-14). In her report, Grievance Officer Carter noted that she had contacted "HCU" (the healthcare unit) regarding Mr. Tolliver's medical complaints, and summarized the report she was given regarding Mr. Tolliver's medical care. Ex. A.4. She then made the following recommendation: "Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the inmate's grievance be MOOT. Appropriate medical treatment is to be determined by medical professionals." *Id.* The Chief Administrative Officer's (CAO's) designee concurred with that recommendation on June 26, 2014. *Id.*

Mr. Tolliver received a copy of the Grievance Office's response to Grievance No. 107-5-14 on approximately June 28, 2014. Ex. A ¶ 15. After requesting copies of the grievance and the Grievance Office's response from the law library, Mr. Tolliver appealed the decision to the Administrative Review Board (ARB) on approximately July 3, 2014. *Id.* ¶¶ 16–18. On April 7, 2015, the ARB recommended denying Grievance No. 107-5-14, finding that it "was appropriately addressed by the

5

facility [a]dministration" including the "grievance officer and HCU staff." Ex. A.5 (ARB Resp. to Grievance No. 107-5-14). The IDOC Director's designee concurred in that decision on April 29, 2015. *Id.* Mr. Tolliver received that decision sometime after April 29, 2015. Ex. A ¶ 19.

### III. Plaintiff's Grievance No. 98-4-14

On April 23, 2014, Mr. Tolliver submitted another grievance. Ex. A ¶ 6; Ex. A.2 (Grievance No. 98-4-14). The grievance is difficult to read but details the denials and delays of medical care that Mr. Tolliver suffered following April 19, 2014 (the date that he submitted Grievance No. 107-5-14). Ex. A.2 at 1. His grievance expressly references the fact that he had previously submitted a grievance on the issue. *Id.* Mr. Tolliver explains that after learning that his hand was broken, he was told he needed a cast but was instead given a soft wrap to put around his hand and sent back to this housing unit. *Id.* Mr. Tolliver further states that he was told by medical staff that his injury required treatment by a specialist, but as of the date of his grievance (April 23, 2014), he had not yet seen one. *Id.* at 1–2. Mr. Tolliver marked his grievance as an emergency. *Id.* at 1.

On April 28, 2014, CAO Butler determined that his grievance should, in fact, be considered an emergency and instructed prison staff to expedite consideration of the grievance. *Id.* According to Grievance Officer Carter's report, Mr. Tolliver's grievance was sent directly to the Grievance Office by the CAO for processing. Ex. A.3 (Grievance Office Resp. to Grievance No. 98-4-14). By the time that Grievance Officer Carter reviewed Mr. Tolliver's grievance on April 29, 2014, Mr. Tolliver had

already been scheduled for an appointment with an orthopedist for surgery. *Id.* Noting that fact, Officer Carter recommended that Mr. Tolliver's grievance be found "MOOT" because "[a]ppropriate medical treatment is to be determined by medical professionals." *Id.* The CAO's designee concurred with that recommendation on May 2, 2016. *Id.*

On April 7, 2015, the same day that it decided Grievance No. 107-5-14, the ARB determined that Grievance No. 98-4-14 "was appropriately addressed by the facility [a]dministration" including the "HCUA" (healthcare unit administrator). Ex. A.6 (ARB Resp. to Grievance No. 98-4-14). The IDOC Director's designee concurred in that decision on April 29, 2015, *id.*, and Mr. Tolliver received that decision sometime afterward, Ex. A ¶ 19.

### **Plaintiff's Response to Defendants' Statement of Material Facts**

1. Plaintiff Jonathan Tolliver ("Plaintiff"), an IDOC inmate, brought suit against defendants Michael Moldenhauer ("Moldenhauer"), Dr. John Trost (["]Dr. Trost"), and Wexford Health Sources, Inc. ("Wexford") (collectively the "Wexford Defendants"), among others, alleging the Wexford Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of 42 U.S.C. § 1983 during Plaintiff's imprisonment at Menard Correctional Center ("Menard") in or around April 2014.

    **Response:** Undisputed.

2. Specifically, as against Wexford, plaintiff alleges he requested sick call several times for his injured hand, but did not receive timely treatment because

Wexford has a policy of cancelling medical passes and ignoring prisoner's medical issues during lockdown.

**Response:** Undisputed, except to the extent that this statement is meant to imply that these are the sole legal theories or allegations supporting Plaintiff's § 1983 claim against Wexford. *See, e.g.,* Doc. No. 1 ¶¶ 39, 46.

3. Plaintiff further alleges that when he was seen by medical personnel, including Dr. Trost and Moldenhauer, they failed to adequately treat his hand injury and resulting pain.

**Response:** Undisputed.

4. Dr. Trost has procured Plaintiff's grievance records from the Illinois Department of Corrections via subpoena. Plaintiff's master grievance file records, procured from Menard, are attached hereto as <u>Exhibit A</u>. Plaintiff's ARB grievance file records are attached hereto as <u>Exhibit B</u>.

**Response:** Undisputed but immaterial.

5. Plaintiff's grievance records contain two potentially relevant grievances concerning Plaintiff's April 2014 hand injury:

    a. Grievance # 107-5-14, dated April 19, 2014, grieves abuse by the Orange Crush Tactical Team to include an assault that injured Plaintiff's hand. Plaintiff's requested relief does not include medical treatment, but rather solely seeks an investigation to determine and reprimand the tactical team member who assaulted him as well as the identification of tactical team members.

        i. On June 17, 2016, Menard's Grievance Officer recommended the grievance be considered moot;

        ii. Menard's CAO concurred with the Grievance Officer's recommendation on June 26, 2014;

8

      iii.    Plaintiff appealed the grievance to the ARB on July 3, 2014;

      iv.    The ARB received Plaintiff's appeal on July 16, 2016 and subsequently denied the grievance.

    b.    Grievance #98-4-14, dated April 24, 2014, grieves that plaintiff's hand was broken, he was provided an ace bandage instead of a cast on April 18, 2014, because the "doctor" was not present, and on April 21, 2014, the "doctor" stated plaintiff needed to be seen by a specialist. The grievance requests "the right medical care for [Plaintiff's] hand" because he is in pain and he believes his bone is healing improperly.

      i.    Filed as an emergency grievance;

      ii.    Menard's CAO determined the grievance warranted expedited emergency review on April 28, 2014;

      iii.    Menard's Grievance Officer recommended the grievance be considered moot;

      iv.    Menard's CAO concurred with the Grievance Officer's recommendation on May 2, 2014;

      v.    The ARB received Plaintiff's appeal on February 5, 2015, and subsequently denied the grievance.

**Response:** Plaintiff disputes the Wexford Defendants' summaries of his grievances, including the omission of Mr. Tolliver's complaints regarding his denials of medical care and access to medical care in Grievance No. 107-5-14. Ex. A.1; *see supra*, pgs. 4, 6 (detailing the complaints Mr. Tolliver made in his grievances). Plaintiff further disputes that the ARB received Grievance No. 107-5-14 on July 16, 2016; instead, according to the ARB's response, they received Grievance No. 107-5-14 on July 16, 2014. Ex. A.5. Plaintiff does not dispute the remaining chronology set forth in Defendants' Statement of Fact No. 5 but contends that it is incomplete both as to the chronology and the substance of the responses by prison staff. For a

9

fulsome discussion of the IDOC's handling of Mr. Tolliver's grievances as set forth by Plaintiff, please see *supra* pages 4–7. Finally, Plaintiff disputes the relief that Mr. Tolliver requested in Grievance No. 107-5-14—he requests that tactical team members be required to wear identifying numbers in the future—but Mr. Tolliver's requests for relief in his grievances are immaterial to the present motion and thus this dispute is also immaterial.

6. Grievance #107-5-14 and Grievance #98-4-14 fail to identify or allege any wrongdoing on the part of Wexford or its policies.

**Response:** Disputed. Mr. Tolliver includes in his grievance a complaint about being ignored despite submitting sick call slips every day following his injury. He further explains that when he asked a correctional officer whether sick call was being conducted at Menard during that time, he was told "no." Ex. A.1; *see also supra* pg. 4.

## Argument

In assessing a motion for summary judgment, courts must view the evidence in the light most favorable to the non-movant, construing all facts and drawing all reasonable inferences in his favor. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 622 (7th Cir. 2014). Under the PLRA, a contention that a prisoner failed to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus to prevail at summary judgment, Defendants must "demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-

movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 601–02 (7th Cir. 2015).

Defendants argue that Plaintiff has failed to exhaust his claims against them for three reasons: (1) Plaintiff did not identify in his grievances the specific Wexford policies that caused his injuries; (2) Grievance No. 98-4-14 was not received by the ARB until February 5, 2015; and (3) Plaintiff did not expressly request "medical relief" as a remedy for the complaints he included in Grievance No. 107-5-14. All three of these arguments fail on their merits under the PLRA, as interpreted by the Supreme Court and Seventh Circuit. Accordingly, the Court should deny Defendants' motion.

### I. IDOC's Grievance Requirements Do Not Require Plaintiff to Identify Policies & Procedures and Consequently Neither Does the PLRA.

Proper exhaustion, as required by the PLRA, is defined by the prison's own requirements. *Jones*, 549 U.S. at 218. Although a prison is free to increase the level of detail required in a prisoner's grievance, in the absence of any specific guidance, the PLRA requires only that the prisoner "object intelligibly" to some problem. *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *see also Jones*, 549 U.S. at 219 (absent prison rules to the contrary, the PLRA does not require prisoners to name every defendant in their grievance). The Supreme Court has held that the PLRA's default rule is based on the purpose of the PLRA, which is *not* to provide notice to a potential defendant that he may be sued, but is instead to alert prison staff to a potential problem. *Jones*, 549 U.S. at 219; *see also Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("The exhaustion requirement's primary

purpose is to alert the state to the problem and invit[e] corrective action." (internal quotation marks omitted)).

The IDOC's grievance requirements are set out in the Illinois Administrative Code. 20 Ill. Admin. Code § 504.810. Section 810 requires the prisoner to set forth the "factual details" regarding the prisoner's complaint, including "what happened, when, where, and the name of each person" involved. *Id.* Notably, § 504.810 does not require the prisoner to name the individuals involved if he "includes as much descriptive information about the individual as possible." *Id.*

The Seventh Circuit has interpreted § 504.810 on numerous occasions, finding that all that the IDOC requires is that the grievance "alerts the prison to the nature of the wrong for which redress is sought"; an articulation of legal theories is not required. *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *see also Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (prisoners' grievances expressing concern about transfer were sufficient to exhaust legal claims against IDOC supervisors for maintaining unconstitutional transfer policies); *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) ("All the grievance need do is object intelligibly to some asserted shortcoming."); *cf. Nelson v. Miller*, 570 F.3d 868, 876 n.4 (7th Cir. 2009) (IDOC prisoners afforded "generous notice pleading standard"). In *Riccardo*, for example, a prisoner who sued administrative staff for failing to protect him from an assault filed a grievance regarding the attack. *Id.* at 524. The grievance focused almost exclusively on the prisoner–assailant, and mentioned only in passing that "the administration don't do the[ir] job." *Id.* The grievance sought

no relief regarding prison staff. Nevertheless, the Seventh Circuit deemed the prisoner's claims exhausted because his grievance "at least hinted at problems in prison administration" and thus could have "induced the prison to consider the possibility that the guards could have prevented this assault." *Id.*

Following the holdings of the Seventh Circuit in *Riccardo*, *Strong*, and *Westefer*, among others, district courts in this Circuit have squarely rejected Defendants' argument. In *Conley v. Birch*, No. 11 C 0013, 2012 WL 4202702 (S.D. Ill. Sept. 19, 2012), the court held that a prisoner was not required to name Wexford in his grievance or include the policies involved in his denials of care in order to comply with the PLRA. 2012 WL 4202702, at *4–5. The court reasoned that a prisoner's complaint about the denial of medical care that he personally suffered was sufficient to alert prison staff to a potential problem with the policies regarding that denial of care and thus the IDOC's grievance requirements (and consequently the PLRA) were satisfied. *Id.* at *5 (citing *Westefer* and *Strong*, among others). The court further noted that any holding to the contrary would be unjust because it would allow a corporate defendant like Wexford to escape liability based on a prisoner's ignorance of the corporation's policies. *Id.* Other district courts have echoed the *Conley* court's holding. *Ford v. Ghosh*, No. 12 C 4558, 2014 WL 4413871, at *6 (N.D. Ill. Sept. 8, 2014) (prisoner had no obligation to "understand the contractual intricacies of how the [IDOC] cared for the health of its inmates"); *Harper v. Henton*, No. 11 C 0406, 2012 WL 6595159, at *6 (S.D. Ill. Nov. 30, 2012) ("Clearly, the prison administrators are in a better position to examine whether any

policies or manpower and financial procedures of Wexford caused or contributed to the delay in Plaintiff's treatment.").

Mr. Tolliver has provided more than enough details in Grievances No. 98-4-14 and 107-5-14 to meet the IDOC's grievance requirements. In Grievance No. 107-5-14, Mr. Tolliver notifies prison staff that he suffered a broken hand following the shakedown of his housing unit on April 8, 2014, and that following that injury his numerous sick call requests were ignored. Ex. A.1 at 2. Mr. Tolliver further explains that when he asked a correctional officer whether the prison was responding to sick call requests, he was told "no." *Id*. His grievance continues by providing additional details about the encounters he had with a male nurse and Defendant Moldenhauer, and Grievance No. 98-4-14 details the further delays that he suffered after those encounters. Mr. Tolliver's statements about the sick call process being halted at Menard, along with his complaints about his sick call requests being ignored, are sufficient to alert prison staff to a problem with the sick call process at the prison and provide them the opportunity to investigate and remedy the problem. Indeed, Mr. Tolliver's grievance provides far more notice than the prisoner provided in *Riccardo*.

The fact that Mr. Tolliver failed to identify Wexford as the entity responsible for these policies is irrelevant, especially because prison staff reviewing Mr. Tolliver's grievance are far better situated to understand the relationship between Wexford and IDOC administrative staff in administering sick call at Menard.[4] *See*

---

[4] Wexford also argues that Plaintiff's grievances are insufficient because they do not request any relief from Wexford directly. The Supreme Court has squarely rejected this

14

*Conley*, 2012 WL 4202702, at *5. Wexford has cited no caselaw in support of its argument that Mr. Tolliver's failure to identify the policies that caused his injuries renders his grievances insufficient under IDOC's administrative rules or the PLRA. Accordingly, the Court should reject Defendants' argument and find that Mr. Tolliver's grievances provided sufficient notice to prison staff and thus complied with the PLRA's exhaustion requirement.

## II. The ARB Addressed Grievance No. 98-4-14 on its Merits.

Defendants next argue that because the ARB did not receive Plaintiff's appeal of Grievance No. 98-4-14 within 30 days from the date that the CAO's designee determined that the grievance was moot, the grievance "is deficient[.]" Doc. No. 78 at 7. Defendants' argument is a nonstarter, however, because the ARB addressed Grievance No. 98-4-14 on its merits.

The Seventh Circuit has repeatedly held that "a procedural shortcoming like failing to follow the prison's time deadlines amounts to failure to exhaust *only* if prison administrators explicitly relied on that shortcoming." *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005); *see also Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense."); *Riccardo*, 375 F.3d at 524 ("[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that

---

argument, *Booth v. Churner*, 532 U.S. 731, 739 (2001), as discussed in greater detail below. *See infra* pg. 17.

15

action, for the grievance has served its function"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (same). Courts in this District have repeatedly recognized the language cited above as controlling precedent. *See, e.g., Burt v. Berner*, No. 13 C 0794, 2015 WL 1740855, at *5 (S.D. Ill. Feb. 25, 2015); *Byrd v. Fenoglio*, No. 13 C 0193, 2014 WL 1127305, at *3 (S.D. Ill. Mar. 21, 2014); *Ford v. Wexford Health Sources, Inc.*, No. 13 C 0043, 2014 WL 685841, at *5 (S.D. Ill. Feb. 20, 2014); *Zoph v. Doe*, No. 13 C 0030, 2014 WL 459798, at *4 (S.D. Ill. Jan. 13, 2014).

Regardless of when the ARB received Grievance No. 98-4-14, it squarely addressed that grievance on its merits, finding it "appropriately addressed" at the facility level by the healthcare unit administrator. Ex. A.5. Nowhere in their decisions do the ARB or the Director's designee assert any procedural defect in Plaintiff's grievance or appeal. *Id.* Accordingly, this Court should not second-guess the ARB's decision to address Grievance No. 98-4-14 on its merits and should find that Plaintiff complied with the PLRA's exhaustion requirement. *See Maddox*, 655 F.3d at 722.

### III. Grievance No. 107-5-14 Fairly Presents Plaintiff's Complaints about Being Denied Medical Care.

The Wexford Defendants lastly contend that Grievance No. 107-5-14 did not sufficiently grieve Plaintiff's claims against them because Mr. Tolliver did not expressly request relief from the Wexford Defendants. According to Defendants, this is insufficient because it failed to put them on notice of Mr. Tolliver's "potential claims" against them. Doc. No. 78 at 7.

16

Defendants' argument is problematic for several reasons. First, as described above, the purpose of the PLRA is to alert prison officials to a problem, not to alert prospective defendants of a prisoner's legal claims against them. *Jones*, 549 U.S. at 219. Accordingly, courts do not assess a prisoner's compliance with the PLRA by determining whether a grievance sufficiently put each individual defendant on notice that he or she may be sued. Instead, courts examine whether the prisoner sufficiently alerted prison staff of their complaints such that the prison could investigate and correct the problem. *See Turley*, 729 F.3d at 649; *see also Strong*, 297 F.3d at 650 (grievance "need only object intelligibly to some asserted shortcoming"). For the reasons discussed above, *supra* pg. 11–15, Mr. Tolliver's grievance has far exceeded that threshold.

Second, Defendants' contention that Mr. Tolliver must request relief from the Wexford Defendants in order to comply with the PLRA has been squarely rejected by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001), which held that the PLRA requires exhaustion of a process and not a remedy. 532 U.S. at 739 (prisoners "exhaust[] processes, not forms of relief" (internal quotation marks omitted)); *see also Strong*, 297 F.3d at 649 ("no administrative system may demand that the prisoner specify each remedy later sought in litigation"). Notably, there is no requirement in § 504.810 that a prisoner include any requests for relief. 20 Ill. Admin. Code § 504.810. And there is similarly no requirement in § 504.810 that a prisoner must check the correct box (or any box) in the section of the grievance form

17

marked "Nature of Grievance" in order for his grievance to be considered on its merits. *Id.*

Finally, notwithstanding any of the above, Grievance No. 107-5-14 sufficiently exhausted Plaintiff's claims against the Wexford Defendants because prison staff construed his grievance as one asserting a complaint about medical care. *See, e.g., Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (medical care complaint not raised expressly in grievance was exhausted because grievance response addressed it); *Granger v. Kayira*, No. 08 C 0039, 2009 WL 3824710, at *7 (N.D. Ill. Nov. 12, 2009) (response to grievance showed that prison officials understood plaintiff's complaints). In response to Grievance No. 107-5-14, Grievance Officer Carter referred Mr. Tolliver's complaints regarding his medical care to the healthcare unit, and upon their report of his treatment, found the grievance moot because "[a]ppropriate medical treatment is to be determined by medical professionals." Ex. A.4. The ARB subsequently determined that Grievance No. 107-5-14 was appropriately addressed by the Grievance Office and healthcare unit staff. Ex. A.5.

Simply put, Grievance No. 107-5-14 in fact put prison officials on notice of Mr. Tolliver's complaints about his medical and "enabled them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005). That is all that the PLRA requires of him. *Westefer*, 422 F.3d at 580.

18

In conclusion, Mr. Tolliver complied with the IDOC's grievance-related requirements and the PLRA's requirement to provide the prison with notice of his complaints about being denied adequate medical care for his hand. Prison staff understood both Grievance Nos. 107-5-14 and 98-4-14 to be raising concerns about his medical treatment, and responded to them as such. Finally, at all stages, prison staff responded to Mr. Tolliver's grievances and appeals on their merits and did not rely on (or even mention) any procedural defect in responding to them. Accordingly, Defendants have failed to establish that no reasonable jury could deny that they are entitled to judgment in their favor on the issue of exhaustion, and the Court should deny their motion for summary judgment on this affirmative defense.

Respectfully submitted,

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Michael Kanovitz
Sarah Grady
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

## **CERTIFICATE OF SERVICE**

  I, Sarah Grady, an attorney, hereby certify that on December 12, 2016, I caused the foregoing Plaintiff's Response to the Wexford Defendants' Motion for Summary Judgment to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

              Respectfully submitted,

              /s/ Sarah Grady
              Sarah Grady
              Attorney for Plaintiff