IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JONATHAN TOLLIVER, #R05836, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Cause No. 3:16-cv-00130-SMY-MAB |
| WEXFORD HEALTH SOURCES, INC., | ) |
| SALVADOR GODINEZ, KIMBERLY | ) |
| BUTLER, LINDA CARTER, C/O | ) |
| HAMILTON, C/O CROSS, LT. WALLER, | ) |
| C/O SKIDMORE, NURSE | ) |
| MOLDENHAUER, TROST, AND | ) |
| UNKNOWN PARTY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF WEXFORD DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS

COME NOW Defendants, Wexford Health Sources, Inc., Michael Moldenhauer, and John Trost, M.D. ("Wexford Defendants"), by and through their counsel, Sandberg Phoenix & von Gontard P.C., and for their Memorandum in Support of their Motion To Exclude the Testimony of Plaintiff's Expert Witness, Michael Slater, M.D., hereby state as follows:

### INTRODUCTION

Plaintiff brought his Complaint against Defendants pursuant to 42 U.S.C. §1983, generally alleging that Defendants were deliberately indifferent in their treatment of Plaintiff's hand injury during Plaintiff's incarceration at Menard Correctional Center ("Menard"). Doc. 1. Specifically, Plaintiff's Complaint alleges that Wexford Defendants failed to provide adequate and timely treatment for Plaintiff's complaints of a broken finger. Doc. 1.

On January 30, 2018, Plaintiff designated Michael Slater, M.D. ("Dr. Slater") as a retained expert in support of his claims. Wexford Defendants seek for this Court to prevent

1

Plaintiff's expert from offering opinions as to the facts and events that occurred, any procedure appropriate in the prison setting, and his remaining opinions and conclusions in general. Dr. Slater has no experience providing medical care in the correctional setting and fails to base his opinions on any reliable facts. Instead, he provides conclusions with no reliable evidentiary support. As will be further discussed below, Dr. Slater does not meet the qualifications as an expert in this matter, and the Federal Rules of Civil Procedure require his testimony should, therefore, be excluded.

## ADMISSION OF EXPERT TESTIMONY

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) govern the admission of expert testimony. *C.W. ex rel. Wood v. Textron, Inc.,* 807 F.3d 827, 834 (7th Cir. 2015). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court has tasked the district court with the responsibility for "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. It is important to keep in mind that "there are many different kinds of experts, and many different kinds of expertise, … the gatekeeping inquiry must be 'tied to the facts' of a particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 591).

Federal Rule of Evidence 702 allows an expert witness to testify about a relevant scientific issue in contention if his testimony is based on sufficient data and is the product of a reliable methodology correctly applied to the facts of the case. *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010). Under the *Daubert* framework, the district court is tasked with determining whether a given expert is qualified to testify in the case in question and whether his testimony is scientifically reliable. *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592–93 (1993)). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Id.* (citing *Carroll v. Otis Elevator Co.,* 896 F.2d 210, 212 (7th Cir.1990)).

The court should consider the proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion. *Id.* (citing *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir.2000)). The district court is given the latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable, *Jenkins v. Bartlett,* 487 F.3d 482, 489 (7th Cir.2007), but the court must provide more than just conclusory statements of admissibility or inadmissibility to show that it adequately performed its gatekeeping function. *Id.* (citing *Naeem v. McKesson Drug Co.,* 444 F.3d 593, 608 (7th Cir.2006)).

The primary purpose behind the *Daubert* inquiry is to avoid speculation. *Daubert*, 509 U.S. at 590. The testimony must be "more than subjective belief or unsupported speculation," and plaintiffs have the burden of demonstrating their experts' findings and conclusions are based on valid scientific methodology. *Id.* Although it is permissible for an expert to educate the fact finder about relevant general principles and background information, it is not enough for an

3

expert to merely present her/his qualifications, conclusions, and assurances of reliability. *Id.* When an opinion is without proper bases and, therefore, speculative, it must be excluded. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000). In sum, the court's gatekeeping role "separates expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001).

## ARGUMENT

As discussed above, the crux of the *Daubert* framework tasks this Court with determining whether the expert is qualified to testify and whether the testimony is scientifically reliable. *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010). Dr. Slater is neither a qualified expert nor is his testimony reliable. On either basis, this Court should exclude Dr. Slater's testimony in its entirety.

### A. Dr. Slater's testimony should be excluded because he is not qualified.

Serving as a disqualification in general, while Dr. Slater has treated patients in a hospital setting, he has never provided treatment to offenders in a correctional setting. Exhibit A, Transcript of the Deposition of Dr. Michael Slater, pp. 16:20-25, 17:1-3, 20:13-16. Between a hospital and correctional facility, the settings are different and the issues are different. Exhibit A, pp. 17:9-10. Further, Dr. Slater has never received training on rendering medical treatment to inmates within a correctional institution as a physician, or in any other capacity. Exhibit A, pp. 17:12-15.

"Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton*, 593 F.3d at 616. In other words, the expert witness's

4

10861101.1

expertise must be tied to the proffered testimony: simply because a doctor, for example, has a medical degree does not make him qualified to opine on all medical subjects. *Id.* The question is "not whether an expert witness is qualified in general, but whether his [or her] 'qualifications provide a foundation for [him or her] to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir.1994)). A district court should scrutinize the expert's proffered conclusion to see if the expert has the "adequate education, skill, and training" to reach his or her conclusion. *Id.* In this case, Dr. Slater does not.

> i. *Dr. Slater is not qualified to testify as an expert physician in the correctional setting.*

In *Gayton*, the 7th Circuit Court determined that "It is undisputed that Dr. Weinstein is an expert in the area of prison healthcare. So, to the extent that it remains relevant, given that Dr. Weinstein's testimony regarding PCJ's or the individual defendants' failure to provide an adequate standard of medical care to Taylor resulted in an injury to her could 'assist the trier of fact to understand the evidence or to determine a fact in issue,' it should be admitted." *See* Fed.R.Evid. 702. *Gayton v. McCoy*, 593 F.3d 610, 618 (7th Cir. 2010). The logical extension of this statement by the 7th Circuit is that as Dr. Slater has shown through his testimony that he is not an expert in prison healthcare, he would be unable to assist the trier of fact to understand the evidence or to determine a fact in issue, and therefore his testimony should be excluded.

Simply put, Dr. Slater is not qualified to opine on the standard of care required of a physician providing a diagnosis and treatment in a correctional setting. "*Daubert* made clear that expert testimony should not be considered in a case unless the expert has genuine expertise ...." *See Adams v. Ameritech Services, Inc.*, 231 F.3d 414, 422–423 (7th Cir. 2000). As Dr. Slater has admittedly no experience with providing medical care in a correctional setting, he has no genuine

5


expertise in this area. As such, he is unqualified to opine as an expert on treatment in correctional facilities, and his proffered testimony should be excluded.

> ii. *Dr. Slater is not qualified to testify as an expert nurse practitioner in the correctional setting, or in any other setting.*

Defendant Moldenhauer is a nurse practitioner and was acting in such capacity at the time of the alleged events as set forth in Plaintiff's Complaint. As Dr. Slater indicated, nurse practitioner training differs from medical school training. Exhibit A, Deposition of Dr. Michael Slader, pp. 15:12-14. Further, Dr. Slater admittedly does not hold himself out as a nurse practitioner expert. Exhibit A, pp. 16:2-9.

> iii. *Dr. Slater is not qualified to testify as to legal conclusions.*

With respect to Defendant Wexford Health Sources, Inc., any opinion or testimony by Dr. Slater, whether explicit or implied, that is used to suggest that Wexford created or condoned any policy, practice or custom, either written or unwritten, which resulted in insufficient or inadequate healthcare, is a legal conclusion and, therefore, not a proper subject for expert testimony under Rule 702. *Donald Lee McDonald v. Wexford Health Sources, Inc., et al.,* No. 09 C 4196, 2016 WL 1383191, at *5 (N.D. Ill. Apr. 7, 2016) (see *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013)). With exceptions that are inapplicable here, "an expert may not offer legal opinions." *Id*. A bald conclusion that a defendant did not have a custom, policy, or practice that violated an inmate's rights is an unacceptable legal opinion. *Id.*

**B.     Dr. Slater should be excluded because his opinions are unsupported.**

In addition to being unqualified as an expert witness in this matter, Dr. Slater provides unsupported, speculative opinions. Federal Rule of Evidence 207(c)–(d) requires this Court to determine whether the expert's testimony is the product of reliable principles and methods, and whether the expert has reliably applied those principles and methods.

As an initial issue, Dr. Slater was not provided with a complete record and has not reviewed important deposition testimony from several witnesses and defendants, including Ronald Skidmore (defendant nurse who initially saw Plaintiff for his complaints), Michael Moldenhauer (nurse practitioner defendant), and Dr. Roland Barr (treating orthopedic surgeon). Further, Dr. Slater seems to believe that additional pertinent information would not change his opinion and is not necessary to review. He indicated that his "role here as an expert witness is not to seek out all available sources of information…I reviewed Mr. Tolliver's complaint and Mr. Tolliver's deposition and other medical records provided. And for the purposes of my opinion today, those materials are sufficient." Exhibit A, pp. 28:13-21, 29:6-9. Dr. Slater regularly chooses to rely on Plaintiff's complaint and testimony rather than the medical record. Exhibit A, pp. 62:11-15. He seems to disregard the medical records and any testimony from defendants in stating, "I believe in this case the patient's perspective takes precedence" and refuses to provide any support for his opinions. Exhibit A, pp. 64:4-11.

Moreover, Dr. Slater has provided no reliable data to substantiate his opinion. "An expert's testimony is not unreliable simply because it is founded on his experience rather than on data; indeed, Rule 702 allows a witness to be 'qualified as an expert by knowledge, skill, *experience*, training, or education.'" *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (emphasis in original). Nevertheless, the expert must explain the "methodologies and principals" that support the opinion; an expert cannot simply assert a "bottom line." *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010). "Nor may the testimony be based on subjective belief or speculation." *Metavante Corp.*, 619 F.3d at 761.

Furthermore, Federal Rules of Evidence 702(d) provides that the expert reliably apply the principles and methods to the facts of the case. Here, Dr. Slater has reviewed Plaintiff's medical

7

records, but has completely disregarded the data contained within same. As such, he has no knowledge regarding the diagnostic and treatment processes utilized by Wexford staff. Therefore, Dr. Slater is unable to reliably apply the principles and methods to the facts of *this* case.

Here, Dr. Slater's opinions are based on no more than speculation. For example, he speculates that Plaintiff was not provided pain relief for the fracture in his hand, but then backtracks to admit that Plaintiff had "something prescribed" for pain relief. Exhibit A, pp. 80:17-25. Further, while he is quick to rely on Plaintiff's testimony about submitting numerous medical request slips, he is overall indifferent on reviewing the slips or even knowing of their existence in order to offer his conclusory opinions. Exhibit A, pp. 82:11-16.

Medical records indicate that Plaintiff reported his injury occurred on August 15, 2014, while Plaintiff indicates that he received his injury on April 8, 2014. Wexford Defendants do not dispute that the inconsistency in the injury date exists, but are of the position that the date of injury is not relevant as Defendant Moldenhauer was first notified of Plaintiff's injury on April 18, 2014 (*See* Wexford Defendants' Memorandum in Support of Motion for Summary Judgment). Dr. Slater offers the opinion that in the several days that passed between the date of the alleged injury and the date he was allegedly first seen for medical care, Plaintiff's hand would still be in significant amount of swelling and significant amount of pain and functional limitation. Exhibit A, pp. 84:7-14. He provides no support for this opinion, and further disregards medical documentation taken at the referenced time that Plaintiff suffered mild to moderate pain in contradiction to his unsupported opinion. Exhibit A, pp. 85:2-19. The same occurs with respect to Plaintiff's allegations of pain and Dr. Slater's decision to believe

Plaintiff's testimony rather than the consistent history provided in the relevant medical chart. Exhibit A, pp. 91:7-14.

Dr. Slater additionally offers opinions from facts that are irrelevant, with no adequate explanation of the connection. For example, Dr. Slater drew the unsupported opinion that because a nurse did not sign his or her name at the end of the medical record, that it means that his overall assessment of Plaintiff was inaccurate. Exhibit A, pp. 96:5-20. Clearly, this is a fallback method used by Dr. Slater as a result of his unexplained methods defying logic and evidence.

As another example, Dr. Slater offers his opinion that if swelling gets worse, then that automatically means that care was inappropriate. Exhibit A, pp. 99:6-22. This shows a complete disregard for any kind of explainable method. Dr. Slater regularly speculated on his theories during his deposition. Exhibit A, pp. 104:15-105:6. Dr. Slater even ignored the subjective portions of the medical chart in order to defend his unsupported opinion that Plaintiff was in constant and significant pain. Exhibit A, pp. 115:18-25, 116:1-20. Dr. Slater spent two hours reviewing the entirety of the medical records he received and writing his report. Exhibit A, pp. 119:9-14.

Dr. Slater's failure to employ any methodology with medical principals and data renders his proffered testimony unreliable. *See Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010) (holding that the district court was within its discretion in rejecting expert testimony as unreliable when the expert "cited no medical standards or principals in support of [his] conclusion" and failed to explain his methodology). Dr. Slater's proffered testimony should be excluded in its entirety.

9

## CONCLUSION

As Dr. Slater is not an expert nurse practitioner, his testimony should be excluded from application to allegations against Defendant Moldenhauer. Further, as it is improper for Dr. Slater to offer any kind of conclusion as to whether or not Wexford had a custom, policy, or practice that violated an inmate's rights as it is an unacceptable legal opinion, his testimony should be excluded from application to allegations against Defendant Wexford.

This leaves application of Dr. Slater's opinions and testimony to Defendant Trost, a physician. As previously explained, Dr. Slater is not an expert in correctional healthcare, and further does not pass the *Daubert* test in any manner. The testimony of Dr. Slater does not meet the necessary standards of relevance and reliability required by the Federal Rules. Dr. Slater's opinions are unfounded conclusory statements that are based on uncorroborated information and, quite simply, are just based upon his own selection of facts. As such, Dr. Slater should be excluded from offering testimony and expert opinions in this case as speculative and not scientifically reliable.

The Wexford Defendants encourage this Court to review the entirety of Dr. Slater's deposition, as was done in *Donald Lee McDonald v. Wexford Health Sources, Inc., et al.,* No. 09 C 4196, 2016 WL 1383191, at *5 (N.D. Ill. Apr. 7, 2016), in conjunction with the above arguments in order to properly assess the necessity of exclusion of this expert from trial.

WHEREFORE, for the reasons set forth herein, Wexford Defendants respectfully request the Court to enter an Order excluding Plaintiff's expert witness, Michael Slater, M.D., from offering testimony at trial.

SANDBERG PHOENIX & von GONTARD P.C.

By: */s/ Kevin K. Peek*
Rodney M. Sharp, #6191776
Kevin Peek, #67440
600 Washington Avenue - 15th Floor
St. Louis, MO 63101-1313
314-231-3332
314-241-7604 (Fax)
rsharp@sandbergphoenix.com
kpeek@sandbergphoenix.com

*Attorneys for Defendants Michael Moldenhauer, Dr. John Trost and Wexford Health Sources, Inc.*

### Certificate of Service

I hereby certify that on the 15th day of January 2019 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Mr. Jon Loevy
Mr. Sam Heppell
Ms. Sarah Grady
Loevy & Loevy
jon@loevy.com
sam@loevy.com
sarah@loevy.com

*Attorneys for Plaintiff*

Ms. Sandra Cook
Assistant Attorney General
scook@atg.state.il.us

*Attorney for Defendants John Hamilton, Seth Cross, Roger Waller, Ron Skidmore, Linda Carter, Kimberly Butler, Salvador Godinez, and Jeff Hutchinson.*

*/s/ Kevin K. Peek*

11

10861101.1