IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JONATHAN TOLLIVER, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) Case No. 16-CV-130-SMY ) ) ) |
| WEXFORD HEALTH SOURCES, INC. et al, | ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jonathan Tolliver filed the instant lawsuit under 42 U.S.C. § 1983. He claims that Defendants Michael Moldenhauer, John Trost, M.D., and Wexford Health Sources, Inc. (collectively "the Wexford Defendants") were deliberately indifferent in their treatment of his hand injury during his incarceration at Menard Correctional Center (Doc. 1).

This case is before the Court for consideration of the Wexford Defendants' Motion for Summary Judgment (Doc. 126). Tolliver filed a response in opposition to the motion (Doc. 143)[1] and Defendant replied (Doc 146). For the following reasons, the motion is **DENIED**.

---

[1] In his response, Tolliver asserts his own Statement of Material Facts (Doc. 140, Ex. 1) but fails to address Wexford Defendants' Statement of Uncontroverted Facts. Defendants argue that the entirety of these statements should be admitted as undisputed and summary judgment should be granted in their favor (Doc. 146 at 7-8). However, such an approach is neither endorsed nor authorized by Fed. R. Civ. P. 56(e).

## Background

The following material facts are either undisputed or taken in a light most favorable to Plaintiff Tolliver as the non-moving party: Wexford Health Sources, Inc. provides medical services to inmates at Illinois Department of Corrections ("IDOC"), including Menard (*See* Doc. 127, Ex. 2 at 103). Defendant Dr. John Trost was the Medical Director at Menard and a Wexford employee at all times relevant to this case (*See* Doc. 127, Ex. 3 at 18-21). Defendant Michael Moldenhauer was a nurse practitioner at Menard and a Wexford employee at all times relevant to this case (*See* Doc. 127, Ex. 4 at 17-32).

*Care and Treatment of Tolliver's hand injury:*

- On April 8, 2014, a correctional officer broke Plaintiff's third metacarpal in his right hand as the officer was removing Plaintiff's handcuffs and hit it against the cell bars (*See* Doc 139, Ex. 1 at 102-105, 162; Ex. 9 at 2; Ex. 10 at 45).

- In the week that followed, Menard was on "Level 1 Lockdown" (Doc. 139, Ex. 1 at 168; Ex. 7). Sick call would be conducted once a day at minimum, whether or not there was a Lockdown (Doc. 127, Ex. 3 at 66).

- On April 8, 2014, Plaintiff showed his significantly swollen hand to a correctional officer and asked to see a nurse (Doc. 139, Ex. 1 at 165).

- Plaintiff's hand did not swell immediately, but swelled over the course of a couple of days. (Doc. 127, Ex. 5). According to the medical records, Plaintiff described his pain intensity as a 3 or 4 on a 1/10 scale on April 16 (*Id*.).[2]

- Plaintiff was first seen by a nurse for an appointment regarding his hand injury approximately one week later, on Wednesday, April 16, 2014 (Doc. 127, Ex. 5). He reported that he was unable to fully bend his finger (Doc. 127, Ex. 5). Plaintiff was provided Tylenol for three days, a splint, ace wrap, and a cold pack (Doc. 127, Ex. 5).

- On Friday, April 18, 2014, ten days after his hand was broken and after lockdown ended, Plaintiff was seen by a nurse for an appointment (Doc. 127, Ex. 5; Doc. 143,

---

[2] Plaintiff disputes this assertion in his deposition indicating that his hand reached approximately double its normal size within the first day (Doc. 139, Ex. 1 at 168, 188; Ex. 8 at 1; Ex. 11).

Ex. 16 at 10; Ex. 4 at 50-51).  During this appointment, Plaintiff indicated that his hand was injured on April 15, 2014[3] (*Id.*).

- According to the medical records, Plaintiff indicated his pain was 4 out of 10, and that the pain he experienced was Intermittent (*Id.*).[4]  Eventually, Plaintiff's hand caused him so much pain that he was unable to sleep and suffered day-long headaches (Doc. 139, Ex. 1 at 249-50).

- On the same day, April 18, 2014, an Inmate Injury Report was filled out and submitted to Defendant Moldenhauer, notifying him of Plaintiff's injury (*Id.*).  Upon his review of the report, Moldenhauer requested to see Plaintiff "immediately" (*Id.*).

- After evaluation, Moldenhauer ordered an x-ray of Plaintiff's right hand and wrist (Doc. 127, Ex. 4 at 57; Ex. 5).

- Moldenhauer also ordered Tylenol, a lower bunk permit, a splint for Plaintiff's right hand, and a follow-up appointment with Defendant Dr. Trost for the following Monday, April 21, 2014 (Doc. 127, Ex. 5).

- Moldenhauer provided a "plainly inappropriate" wrist brace that did nothing to immobilize the fracture, leaving the fracture completely free to move while pushing right where the fracture was, exacerbating Tolliver's pain and fracture (Doc. 139, Ex. 17 at 128).

- On April 21, 2014, Dr. Trost was unavailable.  Moldenhauer saw Plaintiff for his appointment (*Id.*).  Plaintiff informed Moldenhauer "my hand is doing pretty good."[5]

- Moldenhauer noted that Plaintiff's splint was intact, there was less bruising, and Plaintiff's pain was controlled (*Id.*).  According to Plaintiff, Moldenhauer "did nothing to provide more effective pain relief" by maintaining the ineffective dose of Tylenol, 650 mg twice daily (Doc. 139, Ex. 4 at 83-84).

- Moldenhauer referred Plaintiff to an off-site orthopedist which he considered an "emergency" (Doc. 127, Ex. 4 at 84; Ex. 5; Ex. 16).

---

[3] The date of Tolliver's hand injury is directly disputed.  Defendants claim that it is undisputed that Tolliver reported suffering his injury on April 15 (Doc. 127 at 4).  Tolliver disputed this fact during his deposition, explaining that the mistake likely occurred because of Tolliver's reference to "last Wednesday" (Doc. 139, Ex. 1 at 245).  There is no evidence in the record indicating that Tolliver's hand injury in fact occurred on April 15 rather than April 8.

[4] Plaintiff describes his pain as excruciating pain which was exasperated every time he used his hand (Doc. 139, Ex. 1 at 187, 249-50; Ex. 9 at 3).

[5] Plaintiff explained in his deposition that the comment referenced the color of his hand, not his pain level (Doc. 139, Ex. 1 at 253).

- Plaintiff was first seen by Dr. Barr, the surgeon, on April 24, 2014 (Doc 127, Ex. 6 at 9).  Dr. Barr testified that because of the severe degree of displacement and the age of Plaintiff's injury before he received medical attention, he required an osteomy and internal fixation of his third metacarpal: a procedure that required cutting into the scar tissue that had developed over the preceding weeks and realigning Plaintiff's metacarpal to a normal angulation (Doc. 139, Ex. 10 at 57-59, 70).

- Plaintiff underwent surgery for his hand injury on May 1, 2014 (Doc. 127, Ex. 5; Ex. 6 at 9).

- Dr. Trost started Plaintiff on ibuprofen because Plaintiff's operating surgeon ordered Tylenol 3 with codeine if Plaintiff's pain is "not relieved by ibuprofen" (Doc. 127, Ex. 3 at 100; Ex. 5).  The Ibuprofen prescribed by Dr. Trost was inadequate to address Plaintiff's post-operative pain and left him in "extreme pain all day long" (Doc. 139, Ex.1 at 258-60; Ex. 9 at 4).

- After unanswered complaints regarding inadequate pain relief, Plaintiff wrote a letter dated May 24, 2014, to Dr. Trost in which he re-iterated his complaint of inadequate post-operative pain relief (Doc. 139, Ex. 1 at 258; Ex. 19).  Despite Plaintiff's complaints, Dr. Trost did not alter his pain medication or provide the medication Dr. Barr had prescribed (Doc. 139, Ex. 1 at 258-259, 261).

## Discussion

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact – that is where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986).  If the evidence is merely colorable or is not sufficiently probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986).  Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

Prison officials violate the Eighth Amendment if they are deliberately indifferent to a serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chatham v. Davis,* 839 F.3d

679, 684 (7th Cir. 2016). To prevail on such a claim, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The Seventh Circuit has also held that extreme pain is similarly an objectively serious medical condition. *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).

Defendants agree that Tolliver's hand injury was objectively serious. As such, he must prove that Defendants knew of but disregarded his condition. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

### Nurse Moldenhauer

Tolliver contends that Nurse Moldenhauer consciously disregarded his serious medical need by delaying treatment, providing less than minimally competent care, and by failing to address his pain. Specifically, he argues that Nurse Moldenhauer was aware that his fracture required treatment by an orthopedic specialist and intermediate treatment to immobilize the injury. Despite this awareness, Nurse Moldenhauer waited until after the weekend to request that he be referred to an orthopedic surgeon. Tolliver also argues that Nurse Moldenhauer knew his fracture should be immobilized but provided a wrist brace that was not only ineffective but exacerbated his injury. Finally, he argues that Nurse Moldenhauer knew he was in pain and did nothing to modify the medication, forcing him to suffer pain over the weekend.

The parties agree that Tolliver had obvious signs of a serious injury but disagree regarding the severity of pain, degree of swelling and discoloration, and to what extent Tolliver was able to

make a closed fist. That said, the record shows that Nurse Moldenhauer knew Tolliver's situation on April 18, 2014 was an "emergency" that required immediate care, but delayed referral to an orthopedic surgeon until after the weekend. These facts are sufficient to support a finding that Nurse Moldenhauer was deliberately indifferent to Tolliver's condition. *See Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012) (a deliberate indifference claim can be based on delay in treatment that prolongs plaintiff's pain even if the delay does not exacerbate the injury).

Further, although the evidence on the record shows that Nurse Moldenhauer treated Toliver's fracture in part with a wrist brace, the evidence also supports a finding that the wrist brace was ineffective and exacerbated Tolliver's injury. Tolliver's expert Dr. Slater[6] opined that the brace provided by Defendant Moldenhauer was a "plainly inappropriate" substitute for the proper splint "widely known to be required" to address the type of injury which Tolliver suffered. *See Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) ("[J]ury may infer" deliberate indifference where "defendant's chosen 'course of treatment' departs from 'accepted professional practice'").

As to Toliver's pain complaints, Dr. Moldenhauer did not modify Tolliver's dose of Acetaminophen between April 18 and April 21, 2014. At minimum, a reasonable factfinder could conclude that Tolliver was forced to suffer pain over the weekend while awaiting treatment.

For these reasons, summary judgment is not appropriate as to Nurse Moldenhauer.

### Dr. Trost

Tolliver argues that Dr. Trost was aware of and disregarded his severe pain following surgery. Dr. Barr performed Tolliver's hand surgery on May 1, 2014. He prescribed a narcotic analgesic (Tylenol 3 with codeine) to be used if Ibuprofen did not address Tolliver's pain (Doc. 143 at ¶ 20). Tolliver testified that Ibuprofen was not adequately addressing his post-operative

---

[6] Dr. Slater is an expert in emergency medicine who will testify in support of Tolliver.

pain and that he told the nursing staff so on each shift. He also testified that he wrote Dr. Trost a letter directly, sending it through the same institutional mail he has used successfully throughout his imprisonment at Menard (*Id*. at ¶ 24). Although Dr. Trost denies being aware of Tolliver's pain, Tolliver's circumstantial evidence is sufficient to permit a jury to infer otherwise. *See Ford v. Fahim*, 2016 WL 4585728, at *1 (S.D. Ill. Sept. 2, 2016) (presenting evidence that a prisoner placed a letter in the prison's institutional mail creates a rebuttable presumption, because no evidence was presented indicating the mail was dysfunctional which infers that the recipient in fact received the letter). Despite the evidence that Tolliver's pain was not properly controlled with Ibuprofen, Dr. Trost did not follow Dr. Barr's plan to provide him Tylenol 3. Even without Dr. Barr's prescription, the fact that Dr. Trost failed to develop any alternative pain management plan despite allegedly knowing that the Ibuprofen was ineffective is itself sufficient to permit a finding of deliberate indifference. *See Petties*, 836 F.3d at 729-30. Dr. Trost is not entitled to summary judgment.

### Wexford Health Sources, Inc.

Defendant Wexford argues that Tolliver's vicarious liability claim, derived from allegations against Defendants Moldenhauer and Dr. Trost, fails as a matter of law because claims based on *respondeat superior* are not available under § 1983. *See Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008). The Court notes that the Seventh Circuit recently questioned whether private corporations should be subject to *respondeat superior* liability for section 1983 claims. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014); *Glisson*, 849 F.3d at 379 (leaving the question of section 1983 *respondeat superior* liability "for another day"). However, that leaves the question of a *Monell* claim against Wexford, which Wexford argues also fails.

To prevail on a *Monell* claim against Wexford, Tolliver must proffer evidence showing (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled it constitutes a custom or practice causing a constitutional deprivation; or (3) the constitutional injury was caused by a person with final policymaking authority. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Absent a deprivation of a constitutional right, a claim under *Monell* holding fails. *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012).

Tolliver argues that Wexford has instituted a policy that prevented him from receiving medical care from April 8 until April 16, 2014. More particularly, that Wexford is responsible for violating his Eighth Amendment rights: (1) through its obviously problematic policy of denying access to providers for all serious medical needs (except those that non-provider staff decide are emergencies) during lockdowns, and (2) through the actions of Dr. Trost, to whom Wexford delegated final policymaking authority on the topic of narcotic pain medication for severe pain.

Wexford's express policy, as testified to by its Rule 30(b)(6) designee, is to deny prisoners access to providers during a lockdown, unless correctional or nursing staff determine that there is an "emergency" (Doc. 143 at ¶ 10). *See, Sanyo Laser Prod. Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502-03 (S.D. Ind. 2003) ("[P]urpose behind Rule 30(b)(6) is to create testimony that will bind the corporation."); *Quinn v. Obaisi*, 2018 WL 1184736, at *8 (N.D. Ill. Mar. 7, 2018) (testimony of Wexford's 30(b)(6) designee is sufficient to create a triable factual issue on Wexford's policy, defeating summary judgment). And construing the record in Plaintiff's favor, the only training Wexford provided regarding this policy instructed staff *not* to consider Tolliver's non-compound fracture as an emergency (*Id*. at ¶ 9-10). Thus, correctional and nursing staff acted consistently with that training, ignoring his requests for medical attention.

The risk of harm posed by Wexford's policy is obvious: denying medical care during lockdowns to prisoners with serious but non-emergent medical needs virtually guarantees that they will suffer pain during lockdowns. The self-evident nature of this risk is sufficient to establish conscious disregard, as "a factfinder may conclude that . . . the risk was obvious." *Farmer*, 511 U.S. 825 at (1994). Although Wexford argues that rounds made by nurses and physician staff were still provided and available to offenders during lockdown, a jury could reasonably conclude that Tolliver's pleas for help were ignored for eight days until the lockdown was over, due to Wexford's policies. Accordingly, Tolliver's claims against Wexford also survive summary judgment.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 126) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: October 5, 2021**

**STACI M. YANDLE**
**United States District Judge**